1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BARRY ERNEST OCHOA,<br><br>                              Plaintiff,<br><br>v.<br><br>CARLA FRIEDERIKE VON LINTIG,<br><br>                              Defendant. | Case No. 19-cv-346-MMA (JLB)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 64] |

Plaintiff Barry Ernest Ochoa ("Plaintiff"), a California inmate, brings this civil rights action pursuant to 42 U.S.C. § 1983.  *See* Doc. No. 14.  Plaintiff alleges that Defendant Carla Friederike Von Lintig ("Defendant") violated his Eighth Amendment right to adequate medical care.  *See id.*  Defendant moves for summary judgment.  *See* Doc. No. 64.  Plaintiff has not opposed.  For the reasons set forth below, the Court **GRANTS** Defendant's motion.

## I. BACKGROUND[1]

In 2005, a federal receivership was established over all prison medical care in the state of California and the California Correctional Health Care Services ("CCHCS") was

---

[1] The following material facts, taken from Defendant's Separate Statement of Undisputed Material Facts, *see* Doc. No. 64-1, and Plaintiff's Second Amended Complaint, *see* Doc. No. 14, are not reasonably in dispute.

created.  Doc. No. 64 at 7; Doc. No. 64-6 ("Ex. 7").[2]  Under federal receivership, CCHCS developed criteria for treating prisoners with Hepatitis C contained in the Hepatitis C Care Guide.  Doc. No. 64-1 ("DSS") at No. 1.  CCHCS continues to operate under the supervision of the federal receiver.  *Id.*

Defendant, a physician, worked at the Centinela State Prison ("CSP") Hepatitis C clinic (the "Clinic") from January 2011 to January 2015.  DSS at No. 2.  The Clinic was responsible for monitoring patients with Hepatitis C.  *Id.* at No. 3.  Pursuant to the CCHCS Care Guide, once patients met certain criteria, the doctors could send a Treatment Authorization Request ("TAR") to the CCHCS Hepatitis C Virus Oversight Committee.  *Id.*  That committee would review the records and determine if further treatment should be ordered.  *Id.*  Thus, pursuant to the CCHCS Care Guide, Defendant had no authority to order treatment without approval from the Oversight Committee.  *Id.*

On July 3, 2013, Plaintiff was transferred to CSP.  *Id.* at No. 4; *see also* Doc. No. 14 ("SAC") at 3.  At that time, he had chronic Hepatitis C.  DSS at No. 4.  On July 26, 2013, Plaintiff's primary care provider ordered lab work[3] and thereafter referred him to the Clinic on August 15, 2013.  DSS at No. 4; *see also* SAC at 3.

Defendant saw Plaintiff at the Clinic for the first time on November 12, 2013.  DSS at No. 5.  During that appointment, Defendant obtained Plaintiff's medical history, performed a physical examination, and reviewed the Hepatitis C treatment and consent agreement with Plaintiff.  *Id.*  Defendant also "ordered a liver biopsy, in order to stage Plaintiff's Hepatitis C, and stated Plaintiff should follow-up with the Hepatitis C clinic after the biopsy."  *Id.*  During that appointment, Plaintiff asked Defendant to submit a TAR on his behalf, and Defendant refused.  SAC at 3.  Nonetheless, Defendant's conduct

---

[2] As will be explained *infra* Section II, the Court takes judicial notice of Exhibit 7.
[3] According to Defendant, the lab work revealed "Plaintiff had Hepatitis C, Genotype 1a, with a viral load of approximately 3.5 million, and mild elevation of the liver function tests AST and ALT."  DSS at No. 4.

and orders at that visit were consistent with the Care Guide in place at that time.  DSS at No. 5

On April 1, 2014, Plaintiff returned to Defendant for a follow-up appointment. DSS at No. 7.

> At this appointment, Dr. Von Lintig noted that Plaintiff was doing well, with no new complaints, but was feeling "rundown" a lot. She documented that Plaintiff had Hepatitis C Virus genotype 1a, stage two fibrosis, Child-Pugh score 5. Dr. Von Lintig determined that the risks of treating Plaintiff with the Hepatitis C medications interferon and ribavirin at that time outweighed the benefits because those medications had severe side effects, including fatality, and were not very effective in the treatment of genotype 1a Hepatitis C. Furthermore, the Care Guide in place at that time recommended that patients with genotype 1, stage two fibrosis, should only receive treatment if their ChildPugh score was a 6. If a patient had a Child-Pugh score of a 5, the guidelines advised doctors to reevaluate the patient in one year for treatment. Given the above, and in accordance with CCHCS guidelines, and the standards of the medical profession at that time, Dr. Von Lintig discharged Plaintiff from the Hepatitis C clinic, and recommended he follow-up as needed, or within one year.

*Id.*  Plaintiff again requested that Defendant submit a TAR on his behalf, and Defendant denied the request.  SAC at 3.

## II. REQUEST FOR JUDICIAL NOTICE

Defendant asks the Court to take judicial notice of Exhibit 7 in support of her motion for summary judgment.  Doc. No. 642.  Exhibit 7 is the "Receiver Fact Sheet" from the CCHCS website.  Doc. No. 64-6.

Pursuant to Federal Rule of Evidence 201, "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(a).  Having reviewed Exhibit 7, the Court finds that it is generally known and not subject to reasonable dispute.  *See, e.g., Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99

(9th Cir. 2010) (taking judicial notice of information contained on a government website).  Accordingly, the Court **GRANTS** Defendant's request and takes judicial notice of Exhibit 7.

### III. Legal Standard

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party has "the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party."  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  A fact is material if it could affect the "outcome of the suit" under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  *See id.*

If the moving party meets its burden, the nonmoving party must go beyond the pleadings and, by its own evidence or by citing appropriate materials in the record, show by sufficient evidence that there is a genuine dispute for trial.  *See Celotex*, 477 U.S. at 324.  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . ."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  A "scintilla of evidence" in support of the nonmoving party's position is insufficient; rather, "there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Anderson*, 477 U.S. at 252.  Moreover, "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda."  *S.A. Empresa de Viacao Aerea Rio*

*Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982).

Federal Rule of Civil Procedure 56(e) compels the non-moving party to "set out specific facts showing a genuine issue for trial" and not to "rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co., Ltd*, 475 U.S. at 586–87. Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322–23.

The Ninth Circuit has held a district court may properly grant an unopposed motion pursuant to a local rule where the local rule permits, but does not require, the granting of a motion for failure to respond. *See generally Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995). Civil Local Rule 7.1(f)(3)(c) provides that "If an opposing party fails to file papers in the manner required by Local Rule 7.1(e)(2), that failure may constitute a consent to the granting of that motion or other ruling by the court." CivLR 7.1(e)(2). However, a district court may not grant a motion for summary judgment simply because the nonmoving party does not file opposing material, even if the failure to oppose violates a local rule. *See Martinez v. Stanford*, 323 F.3d 1178 (9th Cir. 2003); *Brydges v. Lewis*, 18 F.3d 651, 652 (9th Cir. 1994) (citing *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). The court may, however, grant an unopposed motion for summary judgment if the movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact. *Henry*, 983 F.2d at 950.

## IV. DISCUSSION

### A.   Initial Matters

Before proceeding to the merits of the present motion, the Court addresses the initial matter of it being unopposed and begins by narrating the procedural history of this case.

Plaintiff, proceeding *pro se*, filed an original Complaint on February 19, 2019. *See* Doc. No. 1. Because the filing did not comply with the Local Rules, the Court issued a

Discrepancy Order striking the Complaint from the record.  *See* Doc. No. 4.  In the Discrepancy Order, the Court directed Plaintiff to "re-submit the Complaint and all other initial filings for screening."  *See id.*  Plaintiff thereafter filed a verified First Amended Complaint.  *See* Doc. No. 9 ("FAC").  The Court screened the FAC and dismissed Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A(b).  *See* Doc. No. 13.

On August 8, 2019, Plaintiff filed the operative pleading—the SAC.  *See* Doc. No. 14.  Unlike the FAC, the SAC is not verified.  *Compare* Doc. No. 14 *with* Doc. No. 9.

On April 17, 2020, Plaintiff filed a request for appointment of counsel, *see* Doc. No. 32, which the Court denied without prejudice, *see* Doc. No. 33.  It appears that sometime around March 2021, attorney Peter Deitch began appearing on Plaintiff's behalf before the assigned United States Magistrate Judge at various hearings, *see* Doc. Nos. 47, 49, 63.  Despite repeatedly failing to file a notice of appearance on the docket, *see* Doc. Nos. 48, 49, 50, 52, and 53, on April 26, 2021, Mr. Deitch filed a notice of appearance and became counsel of record, *see* Doc. No. 56, but failed to do so in compliance with Civil Local Rule 5.4(a), *see* Doc. No. 57.

Thus, at the time Defendant filed the present motion, Plaintiff was no longer proceeding *pro se*.  Nonetheless, it is clear to the Court that Plaintiff remains substantively unrepresented.  Beyond appearing at three telephonic/video conferences before Judge Burkhardt, *see* Doc. Nos. 47, 49, 63, Mr. Deitch has not represented Plaintiff in any substantive capacity.  Mr. Dietch failed to clarify his status as attorney of record, as directed by the Court in its August 6, 2021 Order.  Doc. No. 66.  And importantly, Mr. Deitch failed to file an opposition to the present summary judgment motion and failed to meet the Court's deadline to seek leave to file a late opposition, a deadline set at the October 28, 2021 Order to Show Cause hearing.  *See* Doc. No 69.

Accordingly, the Court is unable to hold Plaintiff's failure to oppose the present motion against him.  It is apparent that he never received personal notice of the motion,

as Defendant—appropriately—only served his attorney.  *See* Doc. No. 64-8 at 1.
Moreover, the Court is reluctant to hold the un-verified status of the SAC against him as
well.  Here, the FAC is verified, though the operative SAC is not.  However, because the
previous complaint is verified, and given the background of this case, the Court will also
construe the operative complaint as verified, and consider it as evidence.  *See Franklin v.
Smalls*, No. 09CV1067-MMA (RBB), 2013 U.S. Dist. LEXIS 33450, at *31 (S.D. Cal.
Mar. 8, 2013); *see also McElyea v. Babbitt*, 833 F.2d 196, 197–98 (9th Cir. 1987) (per
curiam) (explaining that a verified complaint in a *pro se* civil rights action may constitute
an opposing affidavit for purposes of the summary judgment rule, where the complaint is
based on an inmate's personal knowledge of admissible evidence, and not merely on the
inmate's belief).

## B.   Eighth Amendment Medical Needs Claim

The government has an obligation to provide medical care for their prisoners.  *See
Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  Failure to do so can amount to an Eighth
Amendment violation under 42 U.S.C. § 1983.  *See id.* at 105.  To succeed on an Eighth
Amendment claim for deficient medical care, a plaintiff must show "deliberate
indifference" to his or her "serious medical needs."  *Id.* at 104.  This includes "both an
objective standard—that the deprivation was serious enough to constitute cruel and
unusual punishment—and a subjective standard—deliberate indifference."  *Snow v.
McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by
Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014).

Defendant asserts that she is entitled to summary judgment because she was not
deliberately indifferent to Plaintiff's medical needs.  Doc. No. 64 at 13.  To satisfy the
subjective deliberate indifference standard, "a prison official must have a 'sufficiently
culpable state of mind,'" which is one of "deliberate indifference" to inmate health or
safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "A prison official may be held
liable under the Eighth Amendment for acting with 'deliberate indifference' to inmate
health or safety only if he knows that inmates face a substantial risk of serious harm and

disregards that risk by failing to take reasonable measures to abate it." *Id.* at 825.  Under this standard, "prison officials who actually kn[o]w of a substantial risk to inmate health or safety may be found free from liability if they respond[] reasonably to the risk, even if the harm ultimately [i]s not averted." *Id.* at 844.  *Farmer* makes clear that deliberate indifference "is shown adequately when a prison official is aware of the facts from which an inference could be drawn about the outstanding risk, and the facts permit us to infer that the prison official *in fact drew that inference*, but then consciously avoided taking appropriate action." *Disability Rts. Mont., Inc. v. Batista*, 930 F.3d 1090, 1101 (9th Cir. 2019) (emphasis added).  Moreover, the standard requires more than mere misdiagnosis, medical malpractice, or even gross negligence.  *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).  However, deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) (citing *Estelle*, 429 U.S. at 104–05).

According to Plaintiff, "[his] claim against [Defendant] arises from his claim that on 11/12/13 [Defendant] refused to provide [him] with medical treatment.  SAC at 4.  It is unclear whether Plaintiff takes issue with Defendant's failure to submit a TAR on his behalf or actually prescribe treatment.[4]  *See id.* at 3 ("On 11/12/13 I made an additional request for treatment when I was at the Hep C clinic. . . . Defendant [ ] refused my request for treatment."); *id.* ("I allege that [Defendant] refused to complete a TAR treatment authorization request.").  However, it is undisputed that pursuant to CCHCS policy, Defendant did not have the authority to order treatment. Doc. No. 64-7 ¶ 3. Accordingly, her failure to prescribe treatment on November 12, 2013, cannot provide

---

[4] To the extent the lack of clarity surrounding Plaintiff's allegations—whether he believes Defendant should have sent in a TAR on his behalf or actually provide treatment—constitutes a disputed fact, it is immaterial.  At the heart of Plaintiff's claim is that Defendant allegedly violated his Eighth Amendment right to adequate medical care when she failed to treat him for his Hepatitis C on November 12, 2013. SAC at 4.  Accordingly, both allegations fail to rise to the level of deliberate indifference.

the basis for Plaintiff's claim.  *See Hines v. Youseff*, 914 F.3d 1218, 1236 (9th Cir. 2019) (finding that defendants who had no discretion or authority relating to the allegedly violative conduct could not be held liable for an Eighth Amendment violation because "[a]n official is liable under § 1983 only if "culpable action, or inaction, is directly attributed to them.'") (quoting *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011).

On November 12, 2013, Defendant denied Plaintiff's request to submit a TAR. SAC at 3.  Instead, Defendant ordered a biopsy to stage Plaintiff's Hepatitis C virus. DSS at No. 5.  It is undisputed that Defendant's actions on November 12, 2013 were consistent with the CCHCS criteria for Hepatitis C treatment.  *See* DSS at No. 5 ("Dr. Von Lintig's conduct and orders at [the November 12, 2013] visit were consistent with the Care Guide in place at that time.").  Moreover, Plaintiff's discontent with Defendant's decision to not send in a TAR, amounts, at best, to a difference in opinion. And "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim."  *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (explaining that inadequate treatment due to negligence, inadvertence, or differences in judgment between an inmate and medical personnel does not rise to the level of a constitutional violation); *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoners Eighth Amendment rights.") (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (internal quotation marks omitted)).

Further, it is undisputed that Plaintiff was eventually referred for further treatment and that by 2017, Plaintiff was free of the Hepatitis C virus.  Doc. No. 64-7 ¶ 6 ("[M]y review of his medical records show Dr. Seeley did refer Plaintiff for further treatment, and that in March of 2017, Mr. Ochoa had been free of the Hepatitis C Virus for one year."); SAC at 4 ("Plaintiff's treatment was approved by Mr. Carmichael on /16/16.  I began the treatment on 3/23/16 and completed it on 6/16/16. On June 21, 2016 the treatment allegedly showed I was cured of hep C.").  A mere delay in providing an

inmate with medical treatment, without more, does not amount to a constitutional violation.  *See McGuckin*, 974 F.2d at 1060, *overruled on other grounds by*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc); *see also Shapley v. Nevada Board of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam); *Hollis v. Dir. of Corr.*, 560 F. Supp. 2d 920, 925 (C.D. Cal. 2008).  And that Plaintiff suffers from cirrhosis of the liver does not alone subject Defendant to liability for her decision not to submit a TAR in accordance with CCHCS policy.  *See Woods v. Harrington*, No. 1:09-cv-02007 GSA PC, 2010 U.S. Dist. LEXIS 122941, at *9 (E.D. Cal. Nov. 3, 2010).

Put simply, there is no evidence that Defendant failed to perform her duties properly; Defendant's actions were consistent with CCHCS policy and do not rise to the level of deliberate indifference.  *See McGuckin v. Smith*, 974 F.2d 1050, 1061 (9th Cir. 1992); *Hollis*, 560 F. Supp.2d at 926–27 (finding that plaintiff's allegation that prison medical staff denied him treatment for Hepatitis C due to CCHCS criteria did not state a cognizable § 1983 claim against either the staff or the entities sued because it amounted to a difference of medical opinion); *Edrosa v. Chau*, No. 19cv88-CAB-DEB, 2020 U.S. Dist. LEXIS 185295, at *3 (S.D. Cal. Oct. 6, 2020) (finding that plaintiff's allegations of inadequate Hepatitis C treatment in prison amount to a difference in medical opinion only); *Woods* 2010 U.S. Dist. LEXIS 122941, at *8 (finding that "[p]laintiff's allegations, at most, indicate a disagreement with the assessment that he does not qualify for inclusion in the Hepatitis C combination treatment program" and do not amount to deliberate indifference). Accordingly, based upon the undisputed facts, Defendant's conduct did not amount to deliberate indifference and thus, she is entitled to summary judgment on Plaintiff's Eighth Amendment claim as a matter of law.

# V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion for summary judgment as to the merits of Plaintiff's Eighth Amendment claim.[5]  The Court **DIRECTS** the Clerk of Court to enter judgment accordingly and close this case.

**IT IS SO ORDERED**.

Dated:  November 15, 2021

HON. MICHAEL M. ANELLO
United States District Judge

---

[5] Defendant also moves for summary judgment on the ground that she is entitled to qualified immunity. *See* Doc. No. 64 at 15.  Because the Court has found that Defendant is entitled to summary judgment as to the merits of Plaintiff's claim, it need not reach any issues regarding qualified immunity.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."); *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[The better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all.").